NO. 26-11141-F

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

CRAIG T. GALLE,

*Appellant,*

v.

ROBIN FLEMING, *et al.,*

*Appellees.*

---

On Appeal from the United States District Court for the Southern District of Florida (Case No. 24-81507-CV-MIDDLEBROOKS)

---

## BRIEF OF APPELLANT CRAIG T. GALLE

---

HENRY B. HANDLER, ESQ.
Florida Bar No.: 259284
WILLIAM J. CORNWELL, ESQ.
Florida Bar No.: 782017
WEISS, HANDLER & CORNWELL, P.A.
One Boca Place
2255 Glades Road, Suite 205-E
Boca Raton, FL 33431
Telephone: (561) 997-9995
hbh@whcfla.com
wjc@whcfla.com
filings@whcfla.com
*Attorneys for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Appellant identifies in alphabetical order, all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal:

| | |
|---|---|
| Anastasio, John J., Esq. | Counsel for Appellee |
| Barry Richard Law Firm | Counsel for Appellee |
| Berman, Bruce Judson, Esq. | Counsel for Appellee |
| Carlton Fields, P.A. | Counsel for Appellee |
| Chew, Benjamin G., Esq. | Counsel for Appellee |
| Cornwell, William J., Esq. | Counsel for Appellant |
| Crawford, Andrew C., Esq. | Counsel for Appellee |
| Curley, Jr., The Honorable G. Joseph | Florida Circuit Court Judge |
| Diaz Reus and Targ, LLP | Counsel for Appellee |
| Dombey, Maia, Esq. | Counsel for Appellee |
| Doyle, John G., Esq. | Counsel for Appellee |
| Eller, Charles Craig, Esq. | Counsel for Appellee |

i

| | |
|---|---|
| Fialco, Kathleen A. | Defendant in U.S. District Court action |
| Fleming, Robin | Appellee |
| Franco, Nina, Esq. | Counsel for Appellee |
| Galle, Craig T. | Appellant |
| Gravante, III, John, Esq. | Counsel for Appellee |
| Handler, Henry B., Esq. | Counsel for Appellant |
| Jayaram Law | Counsel for Appellee |
| Kelley Kaplan & Eller, PLLC | Counsel for Appellee |
| Law Office of John J. Anastasio | Counsel for Appellee |
| MAO IP Holding Company, LLC | Appellee |
| Meyers, Jessica N., Esq. | Counsel for Appellee |
| Middlebrooks, Donald | United States District Court Judge |
| Miss America IP, Inc., | Appellee |
| Miss America's Scholarship Foundation, Inc. | Appellee |
| Palm Beach Polo, Inc. | Defendant in U.S. District Court action |
| Richard, Barry Scott, Esq. | Counsel for Appellee |

ii

| Rossi, Eugene Joseph, Esq. | Counsel for Appellee |
|---|---|
| Seiler, John Preston, Esq. | Counsel for Appellee |
| Seiler, Sautter, Zaden, Rimes & Wahlbrink | Counsel for Appellee |
| Sheppard, Mullin, Richter & Hampton LLP | Counsel for Appellee |
| Straub, Glenn F. | Defendant in U.S. District Court action |
| Vasquez, Camille M., Esq. | Counsel for Appellee |
| Weiss, Handler & Cornwell, P.A. | Counsel for Appellant |
| Zink, Larry Allen, Esq. | Counsel for Appellee |
| Zink, Zink & Zink Co., LPA | Counsel for Appellee |

## **CORPORATE DISCLOSURE**

Appellant certifies that he has no parent company relevant to these proceedings and no publicly held company owns 10% or more of any stock of the entities identified above.

iii

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................i

CORPORATE DISCLOSURE............................................................. iii

TABLE OF CONTENTS ..................................................................iv

TABLE OF AUTHORITIES...............................................................vi

STATEMENT REGARDING ORAL ARGUMENT ..................................1

JURISDICTIONAL STATEMENT ......................................................2

STATEMENT OF THE CASE ...........................................................5

  A.  Nature of the Case ..............................................................5

  B.  Procedural Background .........................................................6

  C.  Statement of Facts Material to the Appeal ....................................11

    1.  The District Court's Acknowledgement of a Legitimate Underlying Dispute. ...................................................................11

    2.  The Withdrawal Within the Rule 11 Safe Harbor. ....................14

    3.  The Court's Mid-Proceeding Pivot to Inherent Authority. ...........15

    4.  The Post-Hearing Investigation Without Notice. .....................15

    5.  The Scope of the Fee Award. .........................................16

  D.  Standard of Review............................................................17

SUMMARY OF THE ARGUMENT .....................................................18

ARGUMENT ............................................................................21

I. THE DISTRICT COURT LACKED AUTHORITY TO SANCTION MR. GALLE UNDER ITS INHERENT POWER ...............................21

  A. Mr. Galle's Posture Did Not Support Exercise of Inherent Authority..........22

  B. The Bypass of Rule 11's Safe Harbor Was Improper. ................................23

II. THE SANCTIONS ORDER VIOLATED MR. GALLE'S DUE-PROCESS RIGHTS ...........................................................................26

  A. The Governing Due-Process Framework. .....................................26

B.  Mr. Galle Was Not Forewarned of the Authority Under Which Sanctions Issued. .......................................................................................................28

C.  Participation in the Evidentiary Hearings Did Not Cure the Notice Deficiency. ...............................................................................................30

D.  No Formal Show-Cause Order Was Issued, and the Court's Oral Comments Were an Inadequate Substitute. ........................................................32

E.  Mr. Galle Had No Opportunity to Respond to the Post-Hearing Investigation. .............................................................................................34

III. THE ORDER'S FINDINGS DO NOT SATISFY THE CLEAR-AND-CONVINCING-EVIDENCE STANDARD FOR SUBJECTIVE BAD FAITH ........................................................................................................36

A.  The Findings Rest on Circumstantial Inference, Not on Clear and Convincing Evidence of Subjective Intent. .....................................37

B.  The Order's Own Language Betrays Preponderance Reasoning. ................40

IV. THE FEE AWARD VIOLATES *GOODYEAR'S* BUT-FOR CAUSATION REQUIREMENT ...........................................................43

A.  The Counterclaim-Defense Award is Not Causally Limited. .......................44

1.  The District Court Found a Legitimate Underlying Dispute. .....................44

2.  Mr. Galle is Not a Counter-Plaintiff. ..........................................................46

B.  The Bankruptcy-Fee Award Sweeps Beyond the Causal Scope. ...................47

C.  The Order Itself Recognizes the Segregation Principle and Inexplicably Declines to Apply it. .....................................................................................50

D.  The Fee Award Was Premature Because the But-For Inquiry Cannot Be Performed Until the Underlying Merits Are Resolved. ...............................52

V. THE DIRECTIVE THAT A COPY OF THE ORDER BE FILED IN THE STATE-COURT ACTION SHOULD ALSO BE REVERSED ....57

CONCLUSION ..............................................................................................58

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

v

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Bessemer City, N.C.*,
   470 U.S. 564, 575 (1985) ...................................................................38

*Barnes v. Dalton*,
   158 F.3d 1212 (11th Cir. 1998) ........................................................36

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991).................................................................... *passim*

*Colorado v. New Mexico*,
   467 U.S. 310 (1984) ..........................................................................41

*Cunningham v. Hamilton County*,
   527 U.S. 198 (1999) ............................................................................2

*Director, Office of Workers' Compensation Programs, Department of*
   *Labor v. Greenwich Collieries*,
   512 U.S. 267 (1994) ..........................................................................41

*Goodyear Tire & Rubber Company v. Haeger*,
   581 U.S. 101 (2017) ................................................................. *passim*

*In re Mroz*,
   65 F.3d 1567 (11th Cir. 1995) ................................................ *passim*

*In re Winship*,
   397 U.S. 358 (1970) ..........................................................................41

*J.C. Penney Corporation, Inc. v. Oxford Mall, LLC*,
   100 F.4th 1340 (11th Cir. 2024) .....................................................43

*JTR Enterprises, LLC v. An Unknown Quantity*,
   2015 WL 3604143 (S.D. Fla. June 5, 2015) ...................................37

*Kadiyala v. Pupke*,
   2026 WL 784572 (S.D. Fla. Jan. 22, 2026)....................................40

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) .......................................................17

*Lefkowitz v. Cunningham*,
   431 U.S. 801 (1977) ..........................................................................42

*Mary Ann Pensiero, Inc. v. Lingle*,
   847 F.2d 90 (3d Cir. 1988) ................................................................2

*Munoz Bustamante v. Inc.*,
   2021 WL 12311069 (S.D. Fla. July 30, 2021)....................... 28, 33

*National Maritime Services v. Straub*,
   979 F. Supp. 2d 1322 (S.D. Fla. 2013) ...........................................16

*Nesbeth v. MasterCard Worldwide,*
  2010 WL 11601018 (S.D. Fla. Sept. 28, 2010)........................ 19, 27, 29, 32
*Ortho Pharmaceutical Corporation v. Sona Distributors,*
  847 F.2d 1512 (11th Cir. 1988) .....................................................................3
*Peer v. Lewis,*
  606 F.3d 1306 (11th Cir. 2010) ........................................................... 17, 21
*Purchasing Power, LLC v. Bluestem Brands, Inc.,*
  851 F.3d 1218 (11th Cir. 2017) ............................................................ *passim*
*Regions Bank v. Kaplan,*
  2021 WL 4852268 (11th Cir. Oct. 19, 2021) .............................................24
*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980) .......................................................................... 21, 30, 33
*Sakon v. Andreo,*
  119 F.3d 109 (2d Cir. 1997) ................................................................ 19, 27, 30
*Schlaifer Nance & Company v. Estate of Warhol,*
  194 F.3d 323 (2d Cir.1999) ........................................................................17
*Thomas v. Tenneco Packaging Co.,*
  293 F.3d 1306 (11th Cir. 2002) ..................................................................18
*United States v. Brown,*
  415 F.3d 1257, 1266 (11th Cir. 2005)........................................................18
*United States v. Shaygan,*
  652 F.3d 1297 (11th Cir. 2011) ..................................................................31

**Statutes**
Fla. Stat. § 605.0102(45) ....................................................................................46
Fla. Stat. § 605.0401 ..........................................................................................46

**Rules**
Fed. R. Civ. P. 11 .......................................................................... *passim*
Fed. R. Civ. P. 41(a)(1)(A)(ii)........................................................................1, 3

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Craig T. Galle, respectfully requests oral argument. This appeal raises substantial questions concerning the jurisdictional consequences of a self-executing stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii); the scope of a federal court's inherent authority to sanction a former party who has been so dismissed; the procedural due-process safeguards required when a court mid-proceeding shifts the basis for sanctions from Fed. R. Civ. P. 11 to inherent authority; the quantum of evidence required to support a finding of subjective bad faith by clear and convincing evidence; and the proper application of *Goodyear Tire & Rubber Company v. Haeger*, 581 U.S. 101 (2017), to a fee award sweeping in defense of an entire counterclaim and a separate bankruptcy proceeding. Oral argument will materially aid this Court's decisional process.

1

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction over the underlying action under 28 U.S.C. § 1332(a) by reason of the diverse citizenship of the parties and an amount in controversy exceeding $75,000.

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The Order on Sanctions (ECF No. 210), entered March 9, 2026, authorized an award of attorneys' fees and costs against Mr. Galle. At the time the Order was entered, Mr. Galle was no longer a party. Specifically, a joint stipulation for dismissal of all claims against Mr. Galle had been entered on January 20, 2026 (ECF No. 160). The Order is a separate appealable order entered against a non-party. *See, Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 204 (1999); *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 98 (3d Cir. 1988). Additionally, the Sanctions Order imposed a non-economic sanction on Mr. Galle personally.

Moreover, the Sanctions Order directed that a copy of the Order be filed in the pending state-court action (ECF No. 210 at 38, ¶ 4), thereby imposing immediate affirmative obligations and collateral consequences on Mr. Galle that are independent of, and not redressable by, review of

2

the fee award alone. This non-monetary directive—which exposes Mr. Galle to further state-court proceedings and the reputational and professional consequences attendant to the dissemination of the District Court's findings—is itself an appealable feature of the Order. *See, Ortho Pharm. Corp. v. Sona Distribs.*, 847 F.2d 1512, 1515 (11th Cir. 1988).

The Notice of Appeal was timely filed within thirty days of entry of the Order on Sanctions, as extended by the timely filing of a motion for reconsideration that tolled the time to appeal under Fed. R. App. P. 4(a)(4)(A).

## STATEMENT OF THE ISSUES

**1. Jurisdiction.** Whether the District Court lacked jurisdiction to sanction Mr. Galle when, on January 20, 2026, the parties filed a self-executing Stipulation of Dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) dismissing all claims against Mr. Galle with prejudice and reserving no jurisdiction—forty-eight days before the Order on Sanctions issued and at a time when no operative sanctions vehicle was pending against Mr. Galle, the Rule 11 motion having been mooted by safe-harbor compliance and inherent authority not yet having been invoked.

3

**2. Authority.** Whether, even if collateral jurisdiction otherwise survived dismissal, the District Court had authority under its inherent power to sanction Mr. Galle after he had been voluntarily dismissed as a party and after the Defendants had honored the Rule 11 safe harbor by withdrawing the challenged exhibits and the allegations referencing them.

**3. Due Process.** Whether the District Court denied Mr. Galle constitutionally adequate notice and an opportunity to be heard when it shifted the basis for sanctions from Rule 11 to inherent authority—by its own admission, only at the order-drafting stage—without issuing a formal show-cause order, without forewarning Mr. Galle of the higher subjective-bad-faith standard he would be required to defend against, and without affording him an opportunity to respond to the post-hearing interrogatory responses and extrinsic judicial findings on which the Order materially relied.

**4. Sufficiency of Findings.** Whether the District Court's factual findings—grounded in circumstantial inferences and demeanor-based credibility determinations—satisfy the clear-and-convincing-evidence standard required to support an inherent-authority sanction premised on

4

subjective bad faith, particularly where the Order's own language ("in all likelihood") signals reasoning consistent with a preponderance standard.

**5. Causation.** Whether the fee award violates the but-for causation rule of *Goodyear* by (a) sweeping in all fees Plaintiffs incurred defending the Counterclaim—to which Mr. Galle was not a party—(b) sweeping in all fees Plaintiffs incurred in a separate bankruptcy proceeding, in each instance without segregating the fees that would not have been incurred but for the alleged misconduct, and (c) by adjudicating the but-for inquiry before the underlying merits had been resolved, when the District Court itself recognized that the ownership dispute had independent legitimacy.

**6. State-Court Filing Directive**. Whether, for all of the reasons set forth above, that portion of the Order on Sanctions directing that a copy of the Order be filed in the state-court action (ECF No. 210 at 38, ¶ 4) should also be reversed, where the underlying findings and authority on which that directive rests are themselves invalid as to Mr. Galle.

<u>STATEMENT OF THE CASE</u>

**A. Nature of the Case**

This appeal arises from an Order on Sanctions (ECF No. 210) entered against Appellant, Craig T. Galle ("**Galle**"), in an action concerning the disputed ownership of certain entities associated with the

Miss America brand. Plaintiffs, Robin Fleming and three Miss America entities, sued Mr. Galle, Glenn F. Straub ("**Straub**"), Kathleen A. Fialco, and Palm Beach Polo, Inc., alleging fraudulent conduct in connection with the formation of two limited liability companies—Miss America Competition, LLC ("**MAC**") and Miss America IP, LLC ("**MAIP**")—and the assertion of Mr. Straub's ownership of those entities.

Mr. Galle's posture in the litigation is unusual. He was named as a defendant in the Plaintiffs' complaint, but he was never counsel of record in the federal action on behalf of any other defendant. He was not a counter-plaintiff in the Amended Counterclaim filed by Mr. Straub and Palm Beach Polo. The District Court nevertheless sanctioned him in a confused dual capacity—simultaneously as a party and as an attorney—without distinguishing between those roles, even after Mr. Galle had been voluntarily dismissed and after the Plaintiffs' Rule 11 motion against him had been mooted by withdrawal of the challenged exhibits within the Rule 11 safe-harbor period.

**B. Procedural Background**

On November 28, 2024, Plaintiffs filed their Complaint. (ECF No. 1.) Following dismissal of the original pleading as a shotgun complaint,

6

Plaintiffs filed a Second Amended Complaint on March 17, 2025. (ECF No. 33.) Defendants answered and Mr. Straub and Palm Beach Polo asserted an Amended Counterclaim on May 20, 2025, attaching as Exhibits 2 and 3 the two Operating Agreements at issue. (ECF No. 65.) Mr. Galle did not join in the Counterclaim.

On August 15, 2025, Plaintiffs served—but did not file—a Motion for Sanctions against Defendants Straub and Galle pursuant to Rule 11, Local Rule 11.1, 28 U.S.C. § 1927, and the Court's inherent authority. (ECF No 97.) Within the twenty-one-day Rule 11 safe-harbor period, on September 5, 2025, Defendants withdrew the two Operating Agreements (Exhibits 2 and 3) and the sentences of paragraphs 10 and 11 of the Amended Counterclaim that referenced them. (ECF No. 96.). Plaintiffs nonetheless filed their Motion for Sanctions on September 6, 2025. (ECF No. 97.)

On January 16, 2026, Plaintiffs executed a full general release in favor of Mr. Galle. The release was broad enough on its face to release every claim asserted in the lawsuit, the motion for sanctions, and the conduct underlying the Order on Sanctions. On January 20, 2026,

Plaintiffs filed a Notice of Withdrawal of their Motion for Sanctions. (ECF No. 159).

On September 22 and 23, 2025, Mr. Galle filed responses opposing the Motion for Sanctions accompanied by a corrected affidavit. (ECF No. 103, 104, 104-1.) The corrected response argued that the Rule 11 motion was moot because Defendants had timely withdrawn the challenged material within the safe harbor. (ECF No. 104 at 2.) Mr. Galle's affidavit explained that, although he originally drafted the Operating Agreements in December 2022, his laptop containing the originals was stolen and he later retyped them from a template. (ECF No. 104-1 at ¶¶ 30, 39–40.)

On January 20, 2026, the Plaintiffs and Defendants, Galle and Kathleen Fialco, filed a joint Stipulation of Dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii), dismissing all of Plaintiffs' claims against Mr. Galle and Ms. Fialco with prejudice. (ECF No. 160.) The Stipulation was signed by counsel for Plaintiffs and by counsel for all Defendants. It reserved no jurisdiction for sanctions, fee-shifting, or any other ancillary purpose. (*Id.*) As of January 20, 2026, the only sanctions vehicle that had been filed against Mr. Galle was Plaintiffs' Rule 11 motion (ECF No. 97), which had been mooted as to the challenged exhibits by the Defendants' timely

8

safe-harbor withdrawal in September 2025 (ECF No. 96). No order to show cause had issued. The Court had not invoked or formally identified inherent authority as a basis for sanctions.

The District Court conducted a Zoom hearing on December 11, 2025, and an evidentiary hearing on January 30 and February 2, 2026. During the evidentiary hearing, Mr. Galle's counsel argued that an Order to Show Cause was required before the Court could consider imposing sanctions based on its inherent authority stating:

> Even if it falls within the Court's inherent powers within Rule 11, there is a requirement there be notice and an opportunity to be heard on whoever is the target and whatever the specific allegations are of misconduct should be identified.
>
> They should not come on the fly so that Mr. Galle might have had bar counsel present or ethics counsel present defending him. . . .
>
> THE COURT: What more notice could he have gotten than he got?
>
> MS. TERRI MEYERS: Either a verbal or a written order to show cause. All he got was -- this was noticed for a Rule 11 hearing.

(Mot. for Sanctions Hr'g Tr. 186:10-17; 187:2-6, Feb. 2, 2026.)[1]

---

[1] Additionally, on the first day of the hearing, Mr. Galle's other counsel, Todd Levine, pointed out that what was scheduled for hearing was only a Rule 11 Motion (as opposed to another type of sanctions hearing) and

Following the evidentiary hearing, the Court *sua sponte* served interrogatories on counsel of record—not on Mr. Galle individually—in the federal action, the Florida state-court action, and the bankruptcy proceeding. (ECF No. 196.) The responses were filed by counsel between February and March 2026. (ECF No. 199, 200, 202, 203.) Mr. Galle was never afforded an opportunity to review or respond to those responses.

On March 9, 2026, the District Court entered the thirty-eight-page Order on Sanctions (ECF No. 210) that is the subject of this appeal. The Order dismissed the Second Amended Counterclaim (to which Galle was not a party) with prejudice and imposed joint and several liability on Mr. Galle and Mr. Straub for attorney's fees Plaintiffs incurred (i) in connection with the sanctions proceedings, (ii) in defending the Counterclaim, (iii) in the bankruptcy proceedings, and (iv) on Complaint matters concerning the Operating Agreements that could be segregated. (ECF No. 210 at 36–37.)

---

requested that the sanctions hearing be terminated as it was "procedurally incorrect." (Hearing Tr. 9:3-17, Jan. 30, 2026.) Despite the objection, the Court continued with the hearing.

### C. Statement of Facts Material to the Appeal

#### 1. The District Court's Acknowledgement of a Legitimate Underlying Dispute.

During the second day of the evidentiary hearing on February 2, 2026—after observing the witnesses and reviewing the exhibits—the District Court openly acknowledged the underlying ownership dispute had merit independent of the Operating Agreements:

> There is a—apparently a legitimate dispute over ownership. I can see from the documents that people presented there are arguments on both sides, whether he was a banker and apparently there were some changes in terms of who was going to own what early on, and that regressed, and whether he was a funder or a banker, and whether he was somehow an owner. Those are probably legitimate issues, and so the lawsuit—she is the one that filed this case, and a lot of the attorney fees would go to that.

(Mot. Sanctions Hr'g Tr. 178:2–9, Feb 2, 2026.) Plaintiffs' own counsel agreed: "there is still a viable dispute about ownership, but [it is] that part of the ownership question that relies on the operating agreements and the meeting minutes" that was sanctionable. (*Id.* at 178:16–19.)

Plaintiffs may seek to invoke *Goodyear's* "exceptional case" carve-out, under which a court may award all of one side's fees where it "can reasonably conclude that all legal expenses were caused solely by the

11

misconduct." 581 U.S. at 110–11. That carve-out is unavailable here, for three independent reasons.

First, the District Court did not undertake the exceptional-case analysis. The Order does not find—and on this record could not find—that every fee Plaintiffs incurred defending the Counterclaim would have been incurred solely because of the alleged fabrication. To the contrary, the District Court found the opposite: that there was "apparently a legitimate dispute over ownership," with "arguments on both sides," and that "those are probably legitimate issues." (*Id.* at178:2-3.) Plaintiffs' own counsel agreed there was a "viable dispute about ownership" independent of the Operating Agreements. A finding of independent merit in the underlying dispute is logically incompatible with a finding that all fees were "caused solely by the misconduct."

Second, *Goodyear* itself reversed the very kind of all-fees award Plaintiffs would defend here. The lower court in *Goodyear* invoked an analogous "egregiousness" rationale to bypass segregation; the Supreme Court held that approach "wide of the mark" because it substituted a temporal or characterization-based judgment for the required causal one. 581 U.S. at 109, 113.

12

Here, the District Court's "infection" language—that the fabricated Operating Agreements were "the heart of the Counterclaim"—is precisely the kind of rhetorical proxy *Goodyear* rejected. A document can be central to a pleading without being the but-for cause of every fee incurred defending that pleading, particularly where, as here, the District Court's own findings establish that an authentic, independently litigable ownership dispute underlays the Counterclaim.

Third, the exceptional-case carve-out cannot rescue the award as applied to Mr. Galle in particular. *Goodyear's* causal inquiry asks which fees the innocent party "would not have incurred but for the bad faith." 581 U.S. at 109. Mr. Galle was not a counter-plaintiff in the Amended Counterclaim—that pleading was filed by Mr. Straub and Palm Beach Polo, Inc. (ECF No. 56.) The Counterclaim-defense fees were caused, in the first instance, by the filing of the Counterclaim, an act Mr. Galle did not undertake. To impute those fees to Mr. Galle, the Order must rest on a derivative-causation theory: that Mr. Galle's alleged fabrication of the Operating Agreements set in motion the conduct of others—Mr. Straub, Palm Beach Polo, and counsel of record—who then filed the Counterclaim. *Goodyear* does not authorize that leap.

The Order's failure to identify which fees would not have been incurred but for Mr. Galle's conduct in particular, as distinguished from the conduct of the actual counter-plaintiffs and their counsel, is itself reversible error under *Goodyea*r.

The "exceptional case" exception is a narrow one, available where a court has actually made the specific findings *Goodyear* requires. The District Court did not make those findings, and the record affirmatively forecloses them. The Counterclaim-defense award must be reversed.

### 2. The Withdrawal Within the Rule 11 Safe Harbor.

When Plaintiffs served their unfiled Motion for Sanctions on August 15, 2025, the twenty-one-day Rule 11 safe-harbor clock began. Within that period, on September 5, 2025, Defendants withdrew the two Operating Agreements as exhibits to the Counterclaim and withdrew the specific sentences in paragraphs 10 and 11 referencing those exhibits as "genuine, true and correct" copies. (ECF No. 96.) That withdrawal complied with Rule 11(c)(2)'s safe-harbor mechanism and rendered the Rule 11 motion moot as to the challenged material.

### 3. The Court's Mid-Proceeding Pivot to Inherent Authority.

At the December 11, 2025 Zoom hearing, the District Court announced that an evidentiary hearing would be held to address "whether someone knowingly submitted false documents to this court and other courts." (Mot. for Sanctions Hr'g Tr. 38, 46, Dec. 11, 2025.) The Court did not specify the legal authority—Rule 11, Section 1927, or inherent power—under which any sanction would issue. Nor did the Court issue a formal show-cause order directed to Mr. Galle.

The Order itself confirms that the determination to rely primarily on inherent authority was made only at the order-drafting stage: "In my informed discretion, I find that Rule 11 and 28 U.S.C. § 1927 are not 'up to the task' of confronting the litigation abuse involved here." (ECF No. 210 at 28.) That timing alone establishes that Mr. Galle could not have been forewarned of the authority under which sanctions would ultimately issue.

### 4. The Post-Hearing Investigation Without Notice.

Following the evidentiary hearing, the District Court conducted an independent investigation. It withdrew the bankruptcy reference (ECF No. 210 at 24–25) and served interrogatories on counsel who had handled

15

the matter in the District Court, the Florida state-court proceeding, and the bankruptcy proceeding. (ECF No. 196.) Every responding attorney pointed to Mr. Galle as the source of the Operating Agreements. (ECF No. 199, 200, 202, 203.) The District Court relied on those responses in the Order—in particular to absolve other counsel while inculpating Mr. Galle. (ECF No. 210 at 25–27, 30.) Mr. Galle was never given an opportunity to review or respond to those responses before the Order issued.

The Court also relied on extrinsic judicial findings about Mr. Straub's credibility from *National Maritime Services v. Straub*, 979 F. Supp. 2d 1322 (S.D. Fla. 2013), and *In re 160 Royal Palm, LLC*—expressly stating it had "learned" of these decisions *after* the evidentiary hearing. (ECF No. 210 at 9.) Mr. Galle had no advance notice of, and no opportunity to address, those extrinsic findings.

### 5. The Scope of the Fee Award.

The Order awards Plaintiffs all fees incurred in the sanctions proceedings, all fees incurred defending the Amended Counterclaim, all fees in the bankruptcy proceedings, and segregable fees on the Complaint relating to the Operating Agreements. (ECF No. 210 at 36–37.) In a

footnote, the Court recognized that "fees related to Plaintiffs' complaint are not recoverable" unless billing records can be segregated to show work that "would not have been necessary 'but for' the misconduct." (ECF No. 210 at 36 n.3.) The Court did not apply that same segregation principle to the Counterclaim or bankruptcy fees.

### D. Standard of Review

This Court normally reviews a district court's imposition of sanctions for abuse of discretion. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). However, when, as here, the district court is "accuser, fact finder and sentencing judge" all in one, the appellate court's review "ensure[s] that any such decision is made with restraint and discretion." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir.1999).

A district court abuses its discretion when it applies an incorrect legal standard, follows improper procedures, makes findings of fact that are clearly erroneous, or commits a clear error of judgment. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004). Underlying questions of law—including the scope of a court's inherent authority and the requirements of due process—are reviewed *de novo*.

17

*See, Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1319 (11th Cir. 2002). An error of law constitutes an abuse of discretion. *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). Findings of fact made under the clear-and-convincing evidence standard are reviewed for clear error, but the heightened standard of proof informs the rigor of appellate review. *See, In re Mroz*, 65 F.3d 1567, 1571 (11th Cir. 1995).

## SUMMARY OF THE ARGUMENT

The Order on Sanctions sweeps Mr. Galle into a severe joint-and-several fee award and imposes the stigma of a federal judicial finding of fraud on the court. It does so after the District Court had been stripped of jurisdiction over Mr. Galle by a self-executing stipulation of dismissal. The Order should be reversed for five independent reasons, the first of which is dispositive and threshold.

**First**, the Order rests on a constitutionally insufficient procedural foundation. The District Court's own Order acknowledges that the determination to invoke inherent authority was made only at the order-drafting stage—which means Mr. Galle could not have been forewarned of that authority before he had to defend himself.

No formal show-cause order issued. Mr. Galle was given no opportunity to respond to the post-hearing interrogatory responses on which the Court materially relied to inculpate him, nor to address the extrinsic judicial findings the Court "learned" of after the hearing. Each of these deficiencies independently violates the due-process framework articulated in *Sakon v. Andreo*, 119 F.3d 109 (2d Cir. 1997), and applied in this district in *Nesbeth v. MasterCard Worldwide*, No. 09-62042-CIV, 2010 WL 11601018 (S.D. Fla. Sept. 28, 2010).

**Second**, the Order's findings do not satisfy the clear-and-convincing evidence standard required to support an inherent-authority sanction premised on subjective bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017), demands either direct evidence of subjective bad faith or conduct so egregious it could only be committed in bad faith. Here, the Court's findings rest principally on circumstantial inferences, demeanor-based credibility determinations, and the Court's own characterization that Mr. Straub "in all likelihood" instructed Mr. Galle. (ECF No. 210 at ¶36(a).) That language tracks a preponderance standard, not the heightened standard applicable here.

19

**Third**, the fee award violates *Goodyear* in three independent respects. It sweeps in the entirety of Plaintiffs' Counterclaim defense fees and bankruptcy fees without segregating those that would not have been incurred but for the alleged misconduct. The District Court's *own* findings establish that the underlying ownership dispute had legitimate independent merit; under those circumstances, the all-fees-recoverable approach is permissible only in the "exceptional case" where every legal expense was caused solely by misconduct—a finding the District Court's observations of legitimate underlying merit affirmatively foreclose. And the fee award is premature: *Goodyear's* but-for inquiry is counterfactual and cannot be reliably performed before the underlying merits are adjudicated.

If Mr. Straub is ultimately found to be the owner on independent evidence, the documents the Court found to have been fabricated were unnecessary to a meritorious claim, and the fees Plaintiffs incurred contesting that claim are not but-for caused by Mr. Galle's alleged conduct. The Court's own footnote 3 acknowledges the segregation principle for the Complaint; the same principle, and the same temporal sequencing, apply to the Counterclaim and the bankruptcy.

20

The Order on Sanctions should be reversed and the cause remanded with instructions to vacate the sanctions imposed on Mr. Galle.

## ARGUMENT

## I.   THE DISTRICT COURT LACKED AUTHORITY TO SANCTION MR. GALLE UNDER ITS INHERENT POWER

A federal court's inherent authority to sanction is "broader and narrower than other means of imposing sanctions." *Peer*, 606 F.3d at 1314. It is "broader" because it reaches conduct beyond the scope of any single rule. But it is "narrower" because "the inherent power's bad faith standard narrows the range of conduct that can satisfy this higher threshold for sanctions." *Id.* at 1314-1315. The Supreme Court has cautioned that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

Three structural problems undermine the District Court's exercise of inherent authority over Mr. Galle: (A) Mr. Galle's status as a former, dismissed party who was never counsel of record in the federal action and never a counter-plaintiff in the Counterclaim; (B) the bypass of Rule 11's safe-harbor protection; and (C) the Court's failure to distinguish the capacity in which sanctions were imposed.

### A. Mr. Galle's Posture Did Not Support Exercise of Inherent Authority.

The Order treats Mr. Galle interchangeably as a party (allegedly fabricating documents) and as an attorney (allegedly filing them in other forums). That treatment cannot be sustained on this record.

Mr. Galle was named as a defendant in the Plaintiffs' Complaint. He was *not* a counter-plaintiff in the Second Amended Counterclaim that the Court dismissed with prejudice as a sanction. (ECF No. 65.) The counterclaim was filed by Mr. Straub and Palm Beach Polo, Inc.; Mr. Galle is nowhere identified as a counter-claimant in that pleading or in the Order. *See,* Order on Sanctions at 3 ("Defendants denied all allegations concerning fabrication and counter-claimed seeking ownership."). The Order nonetheless dismisses the counterclaim with prejudice and awards fees against Mr. Galle and Mr. Straub jointly and severally for "Plaintiffs' fees associated with defense of Defendants' Counterclaim." (ECF No. 210 at 37.) The Court thus imposed a fee sanction on Mr. Galle for defense of a pleading he never filed and to which he was not a party.

Mr. Galle was likewise not counsel of record in the federal action. The federal docket reflects that representation of the Defendants—

22

including Mr. Galle himself—was first by Clayton Trial Lawyers, PLLC, and then by Kluger, Kaplan, Silverman, Katzen and Levine, P.L. (ECF No. 80, 82, 85.) Mr. Galle did not file the counterclaim or its exhibits in the trial court.

The contemporaneous absence of Mr. Galle as a party, as a counter-plaintiff, and as counsel of record left no role in which the Court could coherently exercise inherent authority over him. The Court did not undertake to identify which of those capacities was the operative basis for sanctions; it instead treated Mr. Galle's several capacities as fungible. That is reversible error.

**B. The Bypass of Rule 11's Safe Harbor Was Improper.**

When Plaintiffs served their Motion for Sanctions on August 15, 2025, they triggered the twenty-one-day safe-harbor period of Rule 11(c)(2). Within that period, on September 5, 2025, Defendants—including Mr. Galle—withdrew the two Operating Agreements and the specific sentences in paragraphs 10 and 11 of the Counterclaim that referenced them as "genuine, true and correct" copies. (ECF No. 96.) That timely withdrawal is precisely what Rule 11's safe harbor is designed to encourage and protect. *See,* Fed. R. Civ. P. 11 advisory committee's note

(1993 amendment) ("The revision in subdivision (c)(1)(A) is intended to provide a type of 'safe harbor' against motions . . . by giving the offender a chance to correct the alleged error."). In addition, the Plaintiffs filed a Notice of Withdrawal of their Rule 11 sanctions motion.

The Order acknowledges Defendants' timely withdrawal but proceeds to impose sanctions under inherent authority, declaring that "Rule 11 and 28 U.S.C. § 1927 are not 'up to the task' of confronting the litigation abuse involved here." (ECF No. 210 at 28.) That declaration is in tension with the Supreme Court's admonition that inherent authority "must be exercised with restraint and discretion." *Roadway Express*, 447 U.S. at 764. This Court has cautioned that "'[w]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.'" *Regions Bank v. Kaplan*, No. 17-15478, 2021 WL 4852268, at *8 (11th Cir. Oct. 19, 2021) quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

The Court's pivot to inherent authority effectively nullified the protection Rule 11 extended to Mr. Galle when he honored the safe harbor. If a court may freely substitute inherent authority whenever a

24

litigant complies with the Rule 11 safe harbor, the safe harbor offers no real protection at all. Such a regime would discourage the very corrective conduct Rule 11 was amended to encourage.

The Court's rationale for invoking inherent authority does not justify the bypass. The Order states that Rule 11 "is backward looking, limited to pleading and motion abuse," and that Section 1927 "only applies to unnecessary filings after the lawsuit has begun." (ECF No. 210 at 27–28.) But the conduct the District Court found sanctionable consisted precisely of filing pleadings and exhibits in the District Court (the Counterclaim with attached Operating Agreements). That is the paradigm of Rule 11 conduct. The fact that the same documents were also filed in other tribunals does not transform their filing in the District Court into something Rule 11 cannot reach.

The Supreme Court's admonition in *Chambers* completes the picture. "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50. The District Court here did the opposite. It declared Rule 11 "not 'up to the task'" of policing the very pleading conduct Rule 11 was

25

enacted to police (ECF No. 210 at 28), and then used inherent authority to impose sanctions for conduct as to which Defendants had already complied with Rule 11's procedural protections. *Chambers* and *Regions Bank* together forbid that move.

## II.   THE SANCTIONS ORDER VIOLATED MR. GALLE'S DUE-PROCESS RIGHTS

Even if the District Court had authority to sanction Mr. Galle under its inherent power, the manner in which it did so denied him constitutionally adequate process. The errors are not technical—each of three independent procedural failings deprived Mr. Galle of meaningful notice of the case he had to defend, in violation of the Due Process Clause and of binding Supreme Court precedent.

### A. The Governing Due-Process Framework.

*Chambers* is unequivocal that "[a] court must, of course, exercise caution in invoking its inherent power, and . . . must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." 501 U.S. at 50. The required process includes "fair notice that [the] conduct may warrant sanctions and the reasons why," and "an opportunity to respond, orally or in writing, to the

26

invocation of such sanctions and to justify [the] actions." *In re Mroz*, 65

F.3d at 1575–76 (11th Cir. 1995).

The Second Circuit's articulation in *Sakon* tracks *Chambers* faithfully. Under *Sakon*, the subject of potential sanctions:

> "must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on the matter," and "must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges."

119 F.3d at 114. This Court has repeatedly applied substantively identical requirements. *See, In re Mroz*, 65 F.3d at 1575–76. The District Court's own colleague applied the *Sakon* framework in *Nesbeth*, denying inherent-authority sanctions where the moving party raised that theory only in supplemental briefing. 2010 WL 11601018, at *8. Ironically, in a 2021 published opinion, the same District Court Judge that entered the Order on Sanctions being appealed herein, Judge Middlebrooks, acknowledged these due process requirements stating:

> I note that "[t]he court must afford the sanctioned party due process," which "requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (citations omitted). "In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions." *Id.* at 1575–76

(citation omitted). My Order to Show Cause (DE 37) provided Chau notice and an opportunity to respond, but Chau failed to timely respond.

*See, Munoz Bustamante v. Inc.*, No. 21-80018-CV-MIDDLEBROOKS, 2021 WL 12311069, at *2 (S.D. Fla. July 30, 2021). Three of those due-process requirements were not satisfied here.

### B. Mr. Galle Was Not Forewarned of the Authority Under Which Sanctions Issued.

The most fundamental due-process defect is one the Order itself supplies: the District Court determined *only at the order-drafting stage* that inherent authority, rather than Rule 11 or Section 1927, would be the operative basis for the sanctions ultimately imposed. (ECF No. 210 at 28 ("In my informed discretion, I find that Rule 11 and 28 U.S.C. § 1927 are not 'up to the task' . . . .").) If the choice of legal framework was made when the Order was drafted, then *a fortiori* Mr. Galle could not have been forewarned of that choice when he marshalled his defense.

That timing matters because the defenses available under Rule 11 and inherent authority are meaningfully different. Under Rule 11, Mr. Galle could rely on the safe-harbor withdrawal he had timely effected; he could argue mootness; he could argue that an objective reasonableness inquiry was satisfied at the time of filing. Under inherent authority, in

28

contrast, he had to defend against a finding of subjective bad faith—a fundamentally different inquiry directed to his **state of mind**, requiring different evidence, and supporting different defenses. *See, Purchasing Power,* 851 F.3d at 1223 (11th Cir. 2017) ("The inherent-powers standard is a subjective bad-faith standard.").

Mr. Galle's September 2025 corrected response and affidavit were calibrated to a Rule 11 proceeding. (ECF No. 104, 104-1.) They emphasized the safe-harbor withdrawal, argued mootness, and offered the laptop-theft explanation as evidence of objective reasonableness at the time of filing. Those are Rule 11 defenses. They are not the defenses one mounts to a charge of subjective fraudulent intent under inherent authority.

*Nesbeth* is squarely on point. There, the moving party first raised inherent-authority sanctions in their supplemental briefing. The court held the attorney had not had a sufficient opportunity to be heard on the inherent-power standard. 2010 WL 11601018, at *8. The notice deficiency here is greater: the determination to invoke inherent authority was not even made until the Order was drafted. The defect alone is dispositive and requires reversal.

## C. Participation in the Evidentiary Hearings Did Not Cure the Notice Deficiency.

Plaintiffs may argue that Mr. Galle's participation in two full days of evidentiary hearings cured any notice deficiency. That argument misapprehends what due process requires and cannot be squared with controlling authority.

*Sakon* and *Mroz* require notice of two distinct things: (i) the *conduct* alleged to be sanctionable, and (ii) "the *standard* by which that conduct will be assessed," together with forewarning of "the *authority* under which sanctions are being considered." *Sakon*, 119 F.3d at 114; *In re Mroz*, 65 F.3d at 1575–76; *Roadway Express*, 447 U.S. at 767. Participation in a factual hearing addresses only the first prong. It supplies no notice of the legal standard against which evidence will be measured, nor forewarning of the legal authority under which sanctions will issue.

The distinction matters because the standard drives the defense. A defense calibrated to Rule 11's objective-reasonableness inquiry—safe-harbor compliance, reasonableness at the time of filing, mootness following withdrawal—looks very different from a defense to inherent authority's *subjective bad-faith* standard, which requires the defendant

30

to negate fraudulent intent and to address whether his conduct was "so egregious that it could only be committed in bad faith." *Purchasing Power*, 851 F.3d at 1224–25. Mr. Galle's September 2025 response and corrected affidavit (ECF No. 103, 103-1, 104, 104-1) were calibrated to the Rule 11 framework Plaintiffs had noticed; his testimony followed in that same posture.

This Court's decision in *United States v. Shaygan*, 652 F.3d 1297 (11th Cir. 2011), confirms the point. There, this Court reversed an inherent-authority sanctions award imposed on federal prosecutors precisely because the district court failed to give adequate notice of the conduct and authority under which sanctions would issue. *Id.* at 1317–19. The Court reiterated that due process requires "fair notice" that conduct may warrant sanctions, identification of the reasons why, and an opportunity to respond to the *specific* invocation of sanctions. *Id.* The vice in *Shaygan*—sanctions imposed without timely notice of the authority and standard the targeted party would be required to defend against—is the same vice here, only more pronounced: the Order itself concedes that the District Court did not select inherent authority as the operative basis until the order-drafting stage, weeks after the evidentiary hearings

31

concluded. (ECF No. 210 at 28.) A determination not yet made cannot have been the subject of advance notice.

*Nesbeth* is squarely on point: where inherent authority was first raised in supplemental briefing, the court denied sanctions because the attorney had not had a sufficient opportunity to be heard on that distinct standard. 2010 WL 11601018, at *8. The deficiency here is greater—the inherent-authority theory was not announced at all until the Order itself.

The two days of evidentiary hearings would have been a meaningful opportunity to be heard *if* Mr. Galle had been told what authority and standard he was defending against, and *if* the record had been closed at the end of those hearings. Neither condition obtained.

### D. No Formal Show-Cause Order Was Issued, and the Court's Oral Comments Were an Inadequate Substitute.

Where a court considers sanctions on its own initiative—as opposed to in response to a party's pending motion—the Eleventh Circuit and the Supreme Court have long recognized the necessity of a formal show-cause order. *See, In re Mroz*, 65 F.3d at 1575-1576 ("[T]he accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions."); Fed. R. Civ. P. 11(c)(3) (court "may order an attorney, law firm, or party to show cause why conduct

32

specifically described in the order has not violated Rule 11(b)");
*Bustamante, supra.*

Here, despite counsel's objections, the Court proceeded to impose sanctions under its "inherent authority" without first issuing a show-cause order. After the Defendants withdrew the challenged exhibits within the Rule 11 safe harbor on September 5, 2025, the procedural vehicle for the originally noticed sanctions was substantially undermined. The District Court conducted a Zoom hearing on December 11, 2025, at which it expressed concern about whether "someone knowingly submitted false documents." (Mot. for Sanctions Hr'g Tr. 38, Dec. 11, 2025.) But oral statements at a hearing—particularly where the party-driven motion has been rendered moot by safe-harbor withdrawal—are an inadequate substitute for the formal show-cause mechanism that procedural due process and Rule 11(c)(3) contemplate.

The Court's December 11 statements also did not specify the legal authority under which sanctions might issue. The Court said only that it had "clear authority to deal with" knowingly false filings. (*Id.* at 46.) That is not the specific notice of the standard by which the conduct will be assessed that controlling precedent requires. *Roadway Express,* 447 U.S.

at 767. A statement that the court has authority somewhere is not a statement of which authority will be invoked or what the operative standard will be. And the absence of any reference to inherent authority in the Court's December 11 colloquy is consistent with the Order's own concession that the choice of inherent authority was made later still.

### E. Mr. Galle Had No Opportunity to Respond to the Post-Hearing Investigation.

After the evidentiary hearing concluded on February 2, 2026, the District Court launched an independent post-hearing investigation. It withdrew the bankruptcy reference and served interrogatories on counsel in the District Court, in the Florida state-court action, and in the bankruptcy proceeding. (ECF No. 196.) The interrogatories asked counsel to identify "the source of documents utilized in their filings, any pretrial investigation . . . with respect to the authenticity of the documents, and what investigation if any was conducted after claims were made of fabrication." (ECF No. 210 at 24–25.)

Every responding firm pointed to Mr. Galle as the source. (ECF No. 199, 200, 202, 203.) The Order relies extensively on those responses. It uses them to absolve other counsel—"counsel who signed the pleadings . . . reasonably relied upon Mr. Straub and Mr. Galle" (ECF No. 210 at

34

30)—while inculpating Mr. Galle. (*id.* at 25–27.) Mr. Galle was never given an opportunity to review or to respond to those responses. The interrogatories were directed to *counsel of record* (ECF No. 196), not to Mr. Galle, even though the Order treats Mr. Galle's conduct as the object of the investigation.

Compounding the deficiency, the Order relies on extrinsic judicial findings about Mr. Straub's credibility from *National Maritime Services* and from the bankruptcy court's decision in *In re 160 Royal Palm, LLC*. The Order expressly concedes that the District Court "learned" of those decisions *after* the evidentiary hearing. (DE 210 at 9.)

Although those decisions were nominally about Mr. Straub, they materially supported the Order's findings against Mr. Galle by reinforcing the Court's adverse credibility assessment of Mr. Straub—the very person whose alleged direction the Court inferred Mr. Galle was following. Mr. Galle was never given notice that the Court intended to rely on those extrinsic materials, nor an opportunity to address them.

Each of these deficiencies independently violates *Roadway*'s and *Mroz's* requirement of an "opportunity to respond . . . to the invocation of [] sanctions and to justify [the] actions." 65 F.3d at 1575-1576. Together

35

they convert the post-hearing phase of this proceeding into an *ex parte* inquisition: counsel were asked questions about Mr. Galle, the answers were used to inculpate Mr. Galle, and Mr. Galle was never given the chance to respond.

Due-process violations of this character are not subject to harmless-error analysis when the entire framework of the proceeding is at issue. *Cf. In re Mroz*, 65 F.3d at 1576 (reversing where the sanctioned attorney did not have an adequate opportunity to defend himself). The cure is reversal and, if any further proceedings are had, an opportunity to be heard under the proper standard with notice of the operative authority.

## III.    THE ORDER'S FINDINGS DO NOT SATISFY THE CLEAR-AND-CONVINCING-EVIDENCE STANDARD FOR SUBJECTIVE BAD FAITH

A finding of bad faith is "the key to unlocking a court's inherent power." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). This Court has made clear that "[t]he inherent-powers standard is a subjective bad-faith standard." *Purchasing Power,* 851 F.3d 1218, 1223 (11th Cir. 2017). Absent direct evidence of subjective bad faith, the standard can be satisfied only where conduct is "tantamount to bad faith," meaning it is "so egregious that it could only be committed in bad faith." *Id.* at 1224–

25. And the requisite quantum of proof is heightened: "A party seeking to invoke this inherent power must prove bad faith by clear and convincing evidence." *JTR Enters., LLC v. An Unknown Quantity*, No. 11-CV-10074-JLK, 2015 WL 3604143, at \*2 (S.D. Fla. June 5, 2015). The standard exists because the consequences—a federal judicial finding of fraud, dismissal, joint-and-several liability for fees—are severe and stigmatizing.

For Mr. Galle, two related defects undermine the Order's finding of subjective bad faith: (A) the findings rest on circumstantial inferences and demeanor-based credibility determinations that, even taken at face value, do not establish subjective fraudulent intent by clear and convincing evidence; and (B) the Order's own language betrays reasoning consistent with a preponderance, not a clear-and-convincing, standard.

### A. The Findings Rest on Circumstantial Inference, Not on Clear and Convincing Evidence of Subjective Intent.

Mr. Galle does not, on this appeal, contest the District Court's credibility determinations themselves. He contests the legal sufficiency of those determinations—and of the circumstantial record on which they rest—to support a finding of subjective bad faith by clear and convincing evidence. The distinction matters: a court may disbelieve a witness

37

without necessarily having clear and convincing evidence of the witness's fraudulent state of mind. *Cf. Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) (credibility determinations command deference but the underlying inferences about intent must still satisfy the applicable burden).

The Order's reasoning, distilled, rests on four pillars: (1) timeline inconsistencies, including the change from "Pageant" to "Competition" and then to "Competitions" (ECF No. 210 ¶¶ 35(a)–(c)); (2) discrepancies between the Articles of Organization (filed December 28, 2022) and the Operating Agreements (purportedly executed the same day), particularly with respect to the identity of the Manager (*id.* ¶ 35(d)); (3) Mr. Galle's explanation about a stolen laptop (*id.* at 7); and (4) demeanor-based credibility determinations (*id.* at 8).

It is remarkable that the court treated Mr. Galle's composed, even-toned testimony as a mark against his credibility, as though a witness's failure to perform distress on demand—particularly while being accused of forgery—somehow signals dishonesty rather than the professional self-possession one would expect from an attorney testifying under oath.

Each of those pillars is consistent with conduct short of subjective fraudulent intent. Timeline inconsistencies in repeatedly updated documents—particularly when the underlying entity name was admittedly in flux during the relevant period—are consistent with sloppy lawyering or with later revision and re-execution rather than with knowing fabrication. Discrepancies between Articles of Organization and Operating Agreements are commonplace in transactional practice; entities frequently file articles with one set of governance details and later adopt operating agreements with materially different terms.

The Eleventh Circuit's decision in *Purchasing Power* reinforces that this kind of circumstantial inference is not enough. There, this Court reversed inherent-authority sanctions even where the district court had found gross negligence and "reckless disregard." 851 F.3d at 1224–25. The Court reasoned that "a sanctioning court must . . . make a finding of either bad faith or conduct tantamount to bad faith"; "negligent conduct, standing alone, will not support a finding of bad faith." *Id.* at 1224. *Purchasing Power* is binding on the panel here and forecloses any inference that strong dissatisfaction with a witness's testimony, without more, suffices.

A recent decision in this district underscores the same point. In *Kadiyala v. Pupke*, No. 17-CV-80732, 2026 WL 784572, at \*5 (S.D. Fla. Jan. 22, 2026), the court explained that even where a court suspects document fabrication, the proponent must establish who created the allegedly fraudulent document, and circumstantial evidence may be insufficient to satisfy the clear-and-convincing threshold. The *Kadiyala* court drew a critical distinction between fraud *on* the court—which requires a heightened showing—and ordinary fraud *between* the parties. The court observed that even if defendants had proven that the agreement admitted into evidence was fraudulent by clear and convincing evidence, this would constitute fraud on defendants and not fraud on the Court. *Id* at 5.

The District Court's findings here, even taken at face value, are consistent with the latter; they do not clear the higher bar that an inherent-authority sanction premised on fraud on the court requires.

### B. The Order's Own Language Betrays Preponderance Reasoning.

A telling marker that the Order is in fact reasoning to a preponderance standard is its own language. Paragraph 36(a) finds that "**[i]n all likelihood** Mr. Straub instructed Mr. Galle to prepare at least

40

the April 11 MAC Operating Agreement on or shortly before April 11, 2024." (ECF No. 210 ¶ 36(a) (emphasis added).) The phrase "in all likelihood" is a quintessential preponderance formulation—it asks whether something is more likely than not. *See, In re Winship*, 397 U.S. 358, 371–72 (1970) (Harlan, J., concurring) (preponderance contemplates a "more probable than not" inquiry); *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 272 (1994) (preponderance "means the trier of fact must believe that the existence of a fact is more probable than its nonexistence"). Clear and convincing evidence, by contrast, requires "an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

The Order's framing of paragraph 36(a) is not an isolated drafting infelicity. The subjective-bad-faith inquiry depends on Mr. Galle's mental state, which the Order addresses primarily by inference from Mr. Straub's likely conduct (and Mr. Galle's professional relationship with Mr. Straub). When the keystone of the inferential bridge is itself stated only in "all likelihood" terms, the chain of inference cannot deliver clear-and-convincing certainty as to Mr. Galle's subjective intent.

41

Other portions of the Order similarly reflect preponderance-level reasoning. Paragraph 36(c) finds that "**[i]t is likely that**, following the April 12 Meeting, Mr. Straub instructed Mr. Galle to correct the errors." (ECF No. 210 at ¶ 36(c) (emphasis added).) Paragraph 36(e) reasons that it "can . . . be inferred that Mr. Straub signed the April 16 Signed Operating Agreements on April 16, 2024." (ECF No. 210 at ¶ 36(e).) Inference and likelihood, however reasonable, do not by themselves satisfy clear and convincing evidence of Mr. Galle's *subjective* fraudulent intent.

A complete clear-and-convincing finding must rest on more than the cumulative force of circumstantial inferences each held only to a "likely" or "in all likelihood" standard. When even the strongest individual links in the chain are stated in preponderance terms, the chain as a whole cannot exceed that strength. The Order does not bridge that gap, and the finding of subjective bad faith therefore cannot stand.

Reversal is particularly warranted because the consequences of an inherent-authority finding of bad faith reach far beyond this case. *Cf. Lefkowitz v. Cunningham*, 431 U.S. 801, 804–05 (1977) (recognizing the heightened concerns when an attorney's professional standing is at

42

stake). The clear-and-convincing standard is not a formality. It is the doctrinal recognition that findings of this magnitude require evidence of commensurate force.

## IV.    THE FEE AWARD VIOLATES *GOODYEAR'S* BUT-FOR CAUSATION REQUIREMENT

The Supreme Court's decision in *Goodyear* establishes the controlling rule for fee-shifting under a court's inherent authority: "the court can shift only those attorney's fees incurred because of the misconduct at issue." 581 U.S. at 108. The "causal link is appropriately framed as a but-for test." *Id.* at 109. Recovery extends only to "fees the innocent party would not have incurred but for the bad faith." *Id.* This Court has reiterated the rule. *See, J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1347 (11th Cir. 2024).

A blanket all-fees award is permissible only in the "exceptional case" where a court "[can] reasonably conclude that *all* legal expenses . . . "were caused . . . solely by [the misconduct]." *Goodyear*, 581 U.S. at 110–111. *Goodyear* itself reversed a lower-court fee award precisely because the lower court did not undertake the segregation analysis. *Id.* at 113.

The Order on Sanctions awards Plaintiffs joint-and-several recovery of (i) all fees associated with the sanctions proceedings; (ii) all

43

fees associated with defending the Counterclaim; (iii) all fees associated with the bankruptcy proceedings; and (iv) segregable Complaint-related fees. (ECF No. 210 at 36–37.) Categories (ii) and (iii)—the Counterclaim defense and the bankruptcy fees—are awarded in their entirety, without segregation. (*Id.*) Both awards exceed *Goodyear*'s causal limit, and both fail with particular force when applied to Mr. Galle, who was neither a counter-plaintiff nor a debtor in the bankruptcy proceeding.

### A. The Counterclaim-Defense Award is Not Causally Limited.

The Counterclaim-defense award fails *Goodyear* for two reasons. First, the District Court's *own* findings affirmatively establish that the underlying ownership dispute had legitimate merit independent of the Operating Agreements. Second, Mr. Galle is not a counter-plaintiff in the Counterclaim, and the fees Plaintiffs incurred defending it cannot have been caused by Mr. Galle in any party capacity.

#### 1. *The District Court Found a Legitimate Underlying Dispute.*

During the second day of the evidentiary hearing, the District Court openly observed that "[t]here is a—apparently a legitimate dispute over ownership," with "arguments on both sides" about whether Mr. Straub was "a banker," "a funder," or "somehow an owner." (Mot. Sanctions Hr'g

44

Tr. 178:2–9, Feb. 2, 2026.) The Court added that "[t]hose are probably legitimate issues." (*Id.*) Plaintiffs' own counsel agreed: "there is still a viable dispute about ownership, but [it is] that part of the ownership question that relies on the operating agreements and the meeting minutes" that was sanctionable. (*Id.* at 178:16–19.) Plaintiffs' counsel did not seek dismissal of the entire Counterclaim; he sought striking of "at least *some portion*" of it. (*Id.* at 180:5–8 (emphasis added).)

These findings are dispositive on the *Goodyear* inquiry. If the ownership dispute is "legitimate" and "viable" independent of the Operating Agreements, then Plaintiffs would have incurred *some* fees defending the Counterclaim regardless of the Operating Agreements. Under *Goodyear*, those fees fall outside the but-for causal scope. The all-or-nothing posture of the Order forecloses the segregation that *Goodyear* commands.

The Order treats this question as a matter of "infection," reasoning that the fraudulent documents "are the heart of the Counterclaim and infect every part of it." (ECF No. 210 at 36.) But "infection" is not the test. *Goodyear* requires causation—not contamination, not pervasiveness, but

45

but-for causation. 581 U.S. at 109. The District Court's metaphor cannot substitute for the rule.

Florida law also undercuts the all-fees premise. Under Section 605.0102(45), Florida Statutes, an "[o]perating agreement" includes one that "may be oral, implied, in a record, or in any combination thereof." Fla. Stat. § 605.0102(45). And under Section 605.0401, Florida Statutes, an LLC's membership and management terms can be established by the conduct of the members and the parties' course of dealing where written instruments do not control. The Operating Agreements thus did not *create* Mr. Straub's claimed ownership; they purported to *document* it. To the extent independent evidence of his funding, his direction of the formation, and the entities' course of dealing supports an ownership claim—the very evidence the District Court characterized as raising "legitimate issues"—the Operating Agreements are not but-for causes of the Counterclaim defense.

### 2. Mr. Galle is Not a Counter-Plaintiff.

The fee award against Mr. Galle for "defense of Defendants' Counterclaim" (ECF No. 210 at 37) suffers from an additional defect: Mr. Galle did not bring the Counterclaim. He is not identified as a counter-

46

plaintiff in the operative pleading. (*See,* ECF No. 65.) Plaintiffs' fees defending against a counterclaim are caused, in the first instance, by the counter-plaintiffs who filed it—here, Mr. Straub and Palm Beach Polo. To attribute those fees to Mr. Galle requires a theory of derivative or vicarious causation that *Goodyear* does not endorse and that the Order does not articulate.

The Order's implicit theory appears to be that Mr. Galle is causally responsible because he drafted the Operating Agreements that supported the Counterclaim. But that theory turns the but-for inquiry into pure conduct-attribution, untethered to any requirement that the conduct *caused* Plaintiffs to incur the specific fees in question. *Goodyear* is more demanding: the question is what fees Plaintiffs *would not have incurred* but for the misconduct. 581 U.S. at 109. Where, as here, an ownership dispute would have proceeded in some form regardless of the Operating Agreements, fees attributable to the underlying dispute lie outside the causal scope.

## B. The Bankruptcy-Fee Award Sweeps Beyond the Causal Scope.

The Order awards Plaintiffs all fees they incurred in the related bankruptcy proceedings. (ECF No. 210 at 36–37.) The reasoning is that

47

"all fees incurred for the bankruptcy filing were caused solely by the fraudulent and unethical conduct." (*Id.* at 36.) The Order's premise—that the bankruptcy petition relied on the Operating Agreement for asserted authority—is correct as to the petition itself. But the bankruptcy proceedings included substantive matters that Plaintiffs would have addressed regardless of the source of authority asserted in the petition.

Plaintiffs filed a motion to dismiss in the bankruptcy court. (Bankr. ECF No. 16.) Mr. Straub opposed; the bankruptcy court held a hearing; the debtor ultimately moved to dismiss its own petition; the case was dismissed. (Bankr. ECF No. 16, 30, 44.) The substantive issues litigated in those proceedings included the bona fides of the Chapter 11 filing, the propriety of retaining counsel, and the eventual disposition of the case. While the source of corporate authority was a contested issue, it was not the sole issue. Plaintiffs would have moved to dismiss the petition on multiple grounds had they prevailed on authority alone, and they may have incurred at least some fees in connection with the petition itself, the objections, and the eventual disposition independent of the Operating Agreements' authenticity.

*Goodyear* specifically addresses this kind of mixed-cause scenario. The Court explained that the but-for test can also be applied to a portion or phase of litigation—in other words, even where a phase is largely caused by misconduct, the court must isolate the fees that would not have been incurred but for the misconduct, rather than awarding all fees incurred in that phase. 581 U.S. at 109–10. The District Court's blanket award of "all" bankruptcy fees forecloses precisely the granular analysis *Goodyear* commands.

Moreover, Mr. Galle was not a debtor in the bankruptcy. The petition was filed by Miss America Competition, LLC. (Bankr. ECF No. 1.) Mr. Straub signed the petition. (*Id.*) The Order does not identify any signed pleading or filing by Mr. Galle in the bankruptcy proceedings. *See,* Order on Sanctions at 23–24. The Order's causation theory as to bankruptcy fees—like its theory as to Counterclaim defense fees—thus depends on attributing to Mr. Galle the consequences of conduct attributable to the debtor and to Mr. Straub.

Plaintiffs may invoke *Goodyear*'s "exceptional case" carve-out to argue that all bankruptcy fees are properly recoverable because the bankruptcy itself would never have been filed but for the fabricated

49

Operating Agreements. The argument fails. The carve-out requires the District Court to find that *all* legal expenses were caused *solely* by the misconduct, *Goodyear*, 581 U.S. at 110-111—a finding the Order does not adequately make and which is foreclosed by the District Court's own recognition that an independent ownership dispute underlay the parties' disagreement.

Even accepting Plaintiffs' premise that the petition would not have been *filed* but for the Operating Agreements, *Goodyear* still requires segregation of the fees Plaintiffs incurred *within* the bankruptcy proceedings—claim disputes, retention disputes, plan-related practice—from the smaller subset of fees attributable to the authority issue specifically. The District Court did not perform that analysis.

### C. The Order Itself Recognizes the Segregation Principle and Inexplicably Declines to Apply it.

The clearest indicator that the fee award exceeds *Goodyear* lies in the Order's own footnote 3. With respect to fees on Plaintiffs' Complaint, the Order recognizes:

> Plaintiffs' Complaint against the Defendants, on the other hand, contains a number of claims and theories of recovery. While some of those claims arise from and are based on the fraudulent documents, others, such as the defamation claims, are unrelated to this misconduct. Unless billing records can

50

> be segregated to show work which would not have been necessary "but for" the misconduct, fees related to Plaintiffs' complaint are not recoverable.

(ECF No. 210 at 36 n.3.) That is the correct application of *Goodyear*. But the Order does not apply that rule to the Counterclaim or to the bankruptcy fees. It recognizes that Plaintiffs' Complaint contains multiple theories, some of which are unrelated to the alleged misconduct, yet it treats the Counterclaim as homogeneously infected and the bankruptcy as monolithically caused. The internal inconsistency is reversible.

The Counterclaim (ECF No. 65), like the Complaint, comprises multiple counts. (Counterclaim Count I: Fraud in the Inducement; Count II: Violation of Section 44.406, Florida Statutes; Count III: Breach of Fiduciary Duty; Count IV: Defamation; Count V: Accounting). The Order's own findings establish that the underlying ownership dispute has independent merit. *Goodyear* requires segregation. The Court did not segregate, and so the fee award cannot stand.

51

### D. The Fee Award Was Premature Because the But-For Inquiry Cannot Be Performed Until the Underlying Merits Are Resolved.

A separate and independent defect in the fee award is one of timing. *Goodyear*'s but-for test is, by its nature, counterfactual: it asks what fees the innocent party "would not have incurred but for the bad faith." 581 U.S. at 109. That counterfactual inquiry cannot be reliably performed until the underlying merits have been adjudicated. Where, as here, the alleged misconduct concerns evidence supporting a claim whose merit is independently disputed, the question whether any particular fee would have been incurred absent the misconduct depends on whether the underlying claim itself had merit. The District Court resolved the sanctions question first—and then used that resolution to foreclose the merits inquiry by dismissing the Counterclaim. The result is a fee award that bypasses, rather than performs, the *Goodyear* counterfactual.

Consider the analytic possibilities. If, on a full record, the underlying ownership question were resolved in Mr. Straub's favor on independent evidence—his funding of the acquisition, the entities' course of dealing, and Florida's recognition of oral or implied operating agreements under Section 605.0102(45), Florida Statutes—then the

documents the District Court found to have been fabricated would have been unnecessary embellishments of a true claim of ownership rather than instruments that manufactured a false claim. In that scenario, Plaintiffs would have litigated and lost the ownership dispute regardless of the documents. The fees they incurred defending the Counterclaim would have been incurred in any event—and would therefore fall outside the but-for causal scope of *Goodyear*. The same logic applies to the bankruptcy fees: if Mr. Straub had authority over the Miss America entities by operation of fact and law, an authority dispute in the bankruptcy would have been litigated with whatever document supported (or did not support) the petitioner's asserted authority.

The District Court's observations during the evidentiary hearing make this not a hypothetical concern but a live one. The Court itself noted that "[t]here is a—apparently a legitimate dispute over ownership," with "arguments on both sides," and that "[t]hose are probably legitimate issues." (Mot. Sanctions Hr'g Tr. 178:2–9, Feb. 2, 2026.) Plaintiffs' own counsel agreed there was a "viable dispute about ownership" independent of the Operating Agreements. (*Id.* at 178:16–19.) Where *both* the trial court and the moving party recognized at the sanctions stage that the

53

underlying ownership dispute was viable on independent grounds, the predicate factual question for *Goodyear*—whether the misconduct caused the fees—was not, and could not have been, reliably resolved.

The Rule 11 Advisory Committee Notes expressly contemplate that courts may "defer [their] ruling (or [their] decision as to the identity of the persons to be sanctioned) until final resolution of the case." Fed. R. Civ. P. 11 advisory committee's note (1993 amendment). Although the Order purports to rest principally on inherent authority rather than Rule 11, the underlying logic of timing is the same: the appropriate scope and severity of any sanctions inquiry—and most particularly the *Goodyear* but-for inquiry that drives the magnitude of any fee award—is best assessed in light of the misconduct's actual impact on the proceedings. *Cf. Chambers*, 501 U.S. at 44 (sanctions are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.").

The Order recognizes the principle in part. With respect to fees on Plaintiffs' Complaint, the Order acknowledges that "fees related to Plaintiffs' complaint are not recoverable" unless they can be segregated

as caused but for the misconduct. (ECF No. 210 at 36 n.3.) But that segregation analysis cannot be performed in the abstract—it requires knowing which Complaint claims succeed on the merits and on what evidence. The same is true of the Counterclaim defense fees and the bankruptcy fees: the *Goodyear* question whether those fees would have been incurred absent the alleged misconduct depends on whether the underlying ownership and authority disputes had merit on independent grounds. The District Court could not answer those questions without adjudicating the merits, and it had not adjudicated the merits.

The Order's premise that the fabricated documents are "the heart of the Counterclaim and infect every part of it" (ECF No. 210 at 36) is, in effect, a merits determination masquerading as a sanctions finding. The Court reached that conclusion without the benefit of full discovery on independent ownership evidence, without dispositive motion practice on the non-document-dependent counts, and without trial. *Goodyear* does not authorize a court to substitute a sanctions-stage merits prediction for an actual merits adjudication when computing a fee award.

The "exceptional case" exception that allows recovery of all fees— reserved for situations in which "all legal expenses in the suit "were

55

caused . . . solely by . . . fraudulent and brazenly unethical efforts," *Goodyear*, 581 U.S. at 110-111—is foreclosed precisely by the Court's own contemporaneous recognition that the underlying dispute was "legitimate" on independent grounds.

For Mr. Galle in particular, the prematurity defect compounds the other *Goodyear* problems addressed above. He was not a counter-plaintiff and was not a debtor; the fees in question were primarily caused by other actors' litigation choices in forums where Mr. Galle was, at most, a source of underlying documents. Whether his role in those documents was a but-for cause of any particular fee depends on the merits of the disputes those fees defended. Without that merits adjudication, the fee award against Mr. Galle is not a but-for award; it is a presumed-causation award. *Goodyear* requires the former and forecloses the latter.

Plaintiffs may argue this prematurity principle proves too much— that it would immunize document fabrication whenever the underlying claim has any independent plausibility. It does not. The principle forecloses only premature *Goodyear*-style fee shifting, not sanctions generally. A sanctioning court retains the full inherent-power toolkit

56

recognized in *Chambers*, 501 U.S. at 44-45—"the ability to fashion an appropriate sanction for conduct which abuses the judicial process."

What the District Court could not do—at least not before the merits inquiry was performed—was order fee shifting purporting to compensate Plaintiffs for fees they would otherwise have incurred. The counterfactual is built into *Goodyear*'s own definition of the permissible remedy: recovery is limited "to the fees that party would not have incurred but for the bad faith." 581 U.S. at 102.

Where, as here, the District Court resolved the sanctions question first and used that resolution to foreclose the merits inquiry that would supply the but-for counterfactual, *Goodyear*'s own measure of the permissible award cannot be applied. The Order accordingly fails *Goodyear* on its face.

## V. THE DIRECTIVE THAT A COPY OF THE ORDER BE FILED IN THE STATE-COURT ACTION SHOULD ALSO BE REVERSED

For all of the reasons set forth above, that portion of the Order on Sanctions directing that "[a] copy of this order shall be provided to the State Court for any action deemed appropriate" (ECF No. 210 at 38, ¶ 4) should also be reversed as to Mr. Galle. That directive is not severable from the underlying findings and authority it presupposes: it depends on, and operates to disseminate, the very determinations

57

of inherent authority, due process, evidentiary sufficiency, and causation that Sections I through IV show to be invalid. If the District Court lacked authority under its inherent power to impose sanctions against Mr. Galle, or denied him constitutionally adequate notice and an opportunity to be heard, or made findings that fall short of the clear-and-convincing-evidence standard, then the predicate findings the directive transmits to the state court cannot stand—and the directive that transmits them should not either.

## CONCLUSION

For the foregoing reasons, Appellant, Craig T. Galle, respectfully requests that this Court reverse the Order on Sanctions (ECF No. 210) insofar as it imposes sanctions against Mr. Galle, vacate the joint-and-several award of attorney's fees and costs against Mr. Galle, and remand to the District Court with instructions to vacate the sanctions imposed on Mr. Galle. In the alternative, the Court should remand for further proceedings consistent with this Court's opinion, with directions that any further sanctions inquiry afford Mr. Galle (i) specific notice of the authority and standard under which sanctions are being considered, (ii) a meaningful opportunity to respond to the post-hearing record on which the District Court relied, and (iii) a fee analysis applying the but-for causation rule of *Goodyear* to all categories of fees sought.

58

Dated: May 18, 2026.        Respectfully submitted,

                            WEISS, HANDLER & CORNWELL, P.A.
                            *Attorneys for Appellant*
                            One Boca Place
                            2255 Glades Road, Suite 205-E
                            Boca Raton, FL 33431
                            Telephone: (561) 997-9995

                            By: /s/Henry B. Handler
                                HENRY B. HANDLER, ESQ.
                                Florida Bar No.: 259284
                                hbh@whcfla.com
                                filings@whcfla.com
                                gg@whcfla.com
                                WILLIAM J. CORNWELL, ESQ.
                                Florida Bar No.: 782017
                                wjc@whcfla.com

59

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 11,147 words.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/Henry B. Handler
Fla. Bar No. 259284

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY I filed the foregoing with the Court by uploading to the CM/ECF system for the United States Court of Appeals for the Eleventh Circuit and that a true and correct copy of the foregoing has been furnished via Notice of Electronic Filing and email to all registered parties and counsel on the service list below, on this 18th day of May 2026.

WEISS, HANDLER & CORNWELL, P.A.
*Attorneys for Appellant*
One Boca Place
2255 Glades Road, Suite 205-E
Boca Raton, FL 33431
Telephone: (561) 997-9995

By: /s/Henry B. Handler
HENRY B. HANDLER, ESQ.
Florida Bar No.: 259284
hbh@whcfla.com
filings@whcfla.com
gg@whcfla.com
WILLIAM J. CORNWELL, ESQ.
Florida Bar No.: 782017
wjc@whcfla.com
gp@whcfla.com

## SERVICE LIST

| | |
|---|---|
| Benjamin G. Chew<br>Andrew C. Crawford<br>John G. Doyle<br>Nina Franco<br>Camille M. Vasquez<br>Sheppard, Mullin, Richter &<br>Hampton LLP<br>2099 Pennsylvania Ave., NW,<br>Suite 100 | John J. Anastasio<br>Law Office of John J. Anastasio<br>3601 SE Ocean Blvd., Suite 203<br>Stuart, FL 34996<br>john@psllaw.net |

| | |
|---|---|
| Washington, DC 20006<br>bchew@sheppardmullin.com<br>acrawford@sheppardmullin.com<br>jdoyle@sheppardmullin.com<br>nfranco@sheppardmullin.com | Bruce Judson Berman<br>Carlton Fields, P.A.<br>100 SE 2nd Street<br>Suite 4200<br>Miami, FL 33131-2114<br>305-530-0050<br>305-530-0055 (fax)<br>bberman@carltonfields.com |
| Jessica N. Meyers<br>Sheppard, Mullin, Richter &<br>Hampton LLP<br>30 Rockefeller Plaza<br>New York, NY 10112<br>jmeyers@sheppardmullin.com | Maia Dombey<br>Diaz Reus and Targ LLP<br>100 SE 2nd St., Suite 3400<br>Miami, FL 33131<br>mdombey@diazreus.com |
| Barry Scott Richard<br>Barry Richard Law Firm<br>101 East College Ave., Suite 400<br>Tallahassee, FL 32301<br>barryrichard@barryrichard.com | Charlie C. H. Lee<br>Moore & Lee, P.C.<br>1751 Pinnacle Dr., Suite 1100<br>McLean, VA 22102<br>c.lee@mooreandlee.com |
| Eugene Joseph Rossi<br>Carlton Fields, P.A.<br>1025 Thomas Jefferson Street NW<br>Suite 400 West<br>Washington, DC 20007-5208<br>(202) 965-8119<br>grossi@carltonfields.com | John Gravante, III<br>Jayaram Law<br>3800 NE 1st Ave<br>Suite 500<br>Miami, FL 33137<br>516-441-0961<br>john@jayaramlaw.com |